Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7880 | **DATE** | 3/10/2003 |
| **CASE TITLE** | Keith Mitchell vs. Jonathan Walls | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The court concludes that petitioner is not entitled to relief. Petitioner's claim that his confession was involuntary is denied because it is procedurally defaulted. Petitioner's claim that he was denied effective assistance of trial counsel for failure to object to an improper jury instruction is denied on the merits. Petitioner's claim that he was denied effective assistance of counsel at his suppression hearing is denied in part as procedurally defaulted and is denied in part on the merits. Petitioner's claim that the trial court erred by giving the improper jury instruction is denied on the merits. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. Mailed by MD. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/10/2003 | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice MD mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America ) <br> ex rel. KEITH MITCHELL, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> JONATHAN WALLS, ) <br> Warden, ) <br> Jacksonville Correctional Center[1] ) <br> ) <br> Respondent. ) | No. 00 C 7880 <br> Judge Joan H. Lefkow <br> **DOCKETED** <br> MAR 1 1 2003 |

## MEMORANDUM OPINION AND ORDER

In a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Keith Mitchell challenges his convictions for first-degree murder and aggravated battery with a firearm entered in the Circuit Court of Cook County, Illinois. Petitioner contends that he is not guilty of the crimes and that his conviction was the result of constitutional error. Petitioner raises the following claims in his habeas petition: (1) his confession was involuntary because, at the time of his confession, he was 15 years old and the police coerced him into confessing while his mother, who was trying to contact a lawyer for him, was out of the interrogation room, thus he was denied his constitutional rights to counsel and to remain silent; and (2) he was denied effective assistance of counsel when trial counsel failed to object to an improper jury instruction. Further, petitioner's counsel attaches a *pro se* amended petition to petitioner's reply brief, whereby petitioner raises additional claims: (3) he was denied effective assistance of counsel at his suppression hearing; and (4) the trial court erred in giving an improper jury instruction (the same instruction referred to above). For the reasons stated below, claim (1) is denied because it is procedurally defaulted and claim (2) is denied on the merits. Although petitioner raised claims

---

[1] Thomas Roth, the former Warden for Dixon Correctional Center, was originally listed as respondent in this habeas petition. Petitioner, however, was transferred to Jacksonville Correctional Center where Jonathan Walls is the Warden and thus is the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. This court hereby substitutes Jonathan Walls as respondent. *See* Fed. R. Civ. P. 25(d)(1).

(3) and (4) for the first time in his reply brief and, therefore, the court may treat them as waived, *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002),[2] the court has considered them and denies claim (3) in part because it is procedurally defaulted and in part on the merits and denies claim (4) on the merits.

## LEGAL STANDARDS

Prisoners seeking release from custody under state court judgments must clear significant procedural and substantive hurdles in order to achieve the requested relief. Under 28 U.S.C. § 2254(d), a federal court may grant a prisoner's habeas corpus petition only where the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Id.* at 405. A state court's decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new

---

[2]Further, these claims were clearly prepared by petitioner. As the court has previously ruled when dealing with petitioner's *pro se* filings, it will not accept hybrid representation. (See Order of Oct. 25, 2001, citing *United States v. Fort*, 921 F. Supp. 523, 526 (N.D. Ill. 1996) (courts will not accept *pro se* motions from a litigant who accepts representation by counsel, absent an exception where the litigant has "stand-by" counsel) and *Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992) (". . . the sixth amendment does not create a right to hybrid representation.")). Nevertheless, the court has discretion to entertain a *pro se* filing. *Cf. Hayes v. Hawes*, 921 F.2d 100, 101 (7th Cir. 1990) ("Although there is no Sixth Amendment right to file a pro se brief when the appellant is represented by counsel, nothing precludes an appellate court from accepting the pro se brief and considering the arguments contained therein for whatever they may be worth."). Here, because the court finds that petitioner's additional claims may be resolved as procedurally defaulted or on the merits based on the filings before it, the court addresses these claims despite petitioner's improper *pro se* filings.

context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In order for a state court decision to be considered unreasonable under this standard it must be more than incorrect, rather it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Henderson v. Walls*, 296 F.3d 541, 545 (7th Cir. 2002) (reasonable state court decision must be at least minimally consistent with the facts and circumstances of the case).

Before reviewing the state courts' decisions, however, the court must determine whether the petitioner fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Wilson v. Briley*, 243 F.3d 325, 326 (7th Cir. 2001); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Anderson v. Cowen*, 227 F.3d 893, 899 (7th Cir. 2000).

## FACTS

When considering a habeas petition, this court must presume that any state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);[3] *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The

---

[3] 28 U.S.C. § 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Petitioner does not dispute the facts in the Illinois Appellate Court's opinion. Rather, petitioner alleges additional facts, namely: (1) that he was not advised of his constitutional rights in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), at any time during his interrogation; and (2) that Gene Keller ("Keller") falsified his trial testimony regarding petitioner's gang affiliation with the Vice Lords. Petitioner's attempt to introduce these facts triggers the application of Rule 7 (expansion of the record) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Generally, the court reviews these new facts pursuant to § 2254(e)(2), which sets forth the standards for holding an evidentiary hearing. *Boyko v. Parker*, 259 F.3d 781, 789-90 (7th Cir. 2001). The district court's decision to expand the record is discretionary. *Id.* at 792.

3

facts below, a verbatim recitation of the facts from the Illinois Appellate Court's direct review of petitioner's conviction, are established:

> Following a jury trial, defendant Keith Mitchell was convicted of first degree murder and two counts of aggravated battery with a firearm, and sentenced to 30 years in prison. On July 22, 1992, he and codefendant Tyce Dove shot into a crowd of people on a street corner, striking and killing their intended target, Howard Shell, and injuring two innocent bystanders.
>
> According to testimony, defendant and Tyce Dove were members of the Vice Lords street gang, and one of the victims, Howard Shell, was a member of a rival gang, the Gangster Disciples. The shooting was planned in retaliation for the alleged robbery of a fellow Vice Lord's home. Apparently, the Vice Lords believed the break-in was committed by Shell and other Gangster Disciples.
>
> On July 1, 1992, defendant and Dove, armed with guns obtained from other Vice Lords, proceeded to 79th and Ellis, a busy commercial street corner. Another Vice Lord, Lanell Townsend, was to wait down the street for the shooters to deposit the weapons after the shooting.
>
> After emerging from a parking lot, defendant and Dove shot several times in the direction of Shell, who was standing on the corner. Two others, unrelated to the gang conflict, were also shot and seriously injured. Following the shooting, Gene Keller, a former Vice Lord who was waiting with Townsend down the street, observed Dove run to the car and place a wrapped jacket in Townsend's lap. Dove then ran off. Defendant deposited his weapon at the home of another gang member, then ran home.
>
> On August 1, 1992, police detectives left a business card at defendant's home. In response, defendant and his mother, Andrea [*sic*] Mitchell, reported to police headquarters around 1 a.m. that evening. Though defendant initially denied having anything to do with the shooting, he later confessed to Shell's murder and outlined the events as described above.
>
> Prior to trial, defense counsel filed a motion to suppress the oral confession by defendant, who was 15 years old at the time of the incident. At the hearing on the motion to suppress, the State called Detectives McDermott and Wilson, Youth Officer Stevenson and Assistant State's Attorney [("ASA")] Jefferson to testify. The defense called Mrs. Mitchell and defendant at the

---

With respect to petitioner's assertion that he was not advised of his constitutional rights, the proffered facts contradict the record before the court. Petitioner's counsel attaches affidavits of petitioner and his mother as proof. (Pet. ¶¶ 5, 7, 12-13; Pet. Ex. A, K. Mitchell Aff. ¶¶ 12, 14; Pet. Ex. B, A. Mitchell Aff. ¶¶ 11, 16.) Petitioner's counsel uses these affidavits to create further doubt that petitioner's confession was voluntary because it was outside the presence of his mother. According to a transcript attached by petitioner's counsel, however, petitioner's mother testified that petitioner was advised of his "rights" and understood those rights in her presence. (Pet. Ex. G, Tr. at 138, 158, 164.) Thus, petitioner's allegation that he was not given his *Miranda* warnings will not be considered by the court.

With respect to Keller's falsifying his testimony, however, the court will consider this fact and apply it to its analysis under the fundamental miscarriage of justice exception. *See* discussion *infra* page 6 and note 9-10.

4

suppression hearing, but did not call Ms. Fredrenna Lyle, the attorney summoned by Mrs. Mitchell to go to the police station the night of defendant's arrest.

At the suppression hearing, the State presented evidence that Mrs. Mitchell was given access to defendant at all times the evening of his arrest, though she went in and out of the room - throughout the evening. Defendant made two exculpatory statements in the presence of his mother. Detective McDermott testified that at one point when Mrs. Mitchell was out of the room, defendant told him that he wanted to "tell the whole truth" and didn't want his mother to know. Detective McDermott testified he told defendant to work this out with his mother, and that he heard the two raise their voices, apparently arguing, when she subsequently re-entered the room. Mrs. Mitchell again left the room, and officers summoned a youth officer. After the arrival of the youth officer, defendant made the oral confession that was the subject of the suppression hearing to ASA Jefferson, Detective Wilkins and Youth Officer Stevenson.

The State witnesses testified that defendant was asked prior to making his statement if he wished to confess without his mother present, and he agreed. After making the oral confession, defendant agreed to have ASA Jefferson prepare a written statement. At that point, Mrs. Mitchell arrived with attorney Ms. Lyle. Detective Wilkins testified that, after learning of defendant's confession, Ms. Lyle stated "I don't know what the use is. He already told you everything." Jefferson and Stevenson testified that Ms. Lyle made a similar remark. Much of the cross-examination of the State witnesses involved the timing of the events surrounding defendant's oral statement.

Defense witness Mrs. Mitchell testified that after a conversation with a friend at the police station, she informed defendant, in the presence of police officers, that she was contacting a lawyer, Ms. Lyle. After receiving a page from Ms. Lyle, she left the interview room again to call her from a downstairs phone, and informed the police officers of this. However, she testified that when she attempted to return to the room in which defendant was being questioned, another officer prevented her from going upstairs and threatened her with arrest if she came back up.

Mrs. Mitchell testified that she waited downstairs for Ms. Lyle, and upon her arrival, the officers let the two upstairs to defendant's interview room. She testified that throughout the evening, she always told the officers where she was going when leaving the room, and informed them she was obtaining an attorney for defendant.

Defendant testified the officers threatened him while his mother was out of the room, and told him if he didn't admit to shooting at least one person he would be locked away for murder. He testified that in his oral statement to ASA Stevenson, he was only repeating what the officers told him to say. He denied ever telling police he wanted to speak to them without his mother present.

After hearing argument from both sides, the court denied the motion to suppress defendant's oral statement, resolving issues of credibility in favor of the State. The matter then proceeded to trial.

> At trial, defense counsel called Ms. Lyle. She testified that prior to arriving at the station, she called and told an officer she was coming to represent defendant and so all questioning should stop. However, she was unable to recall the name of the officer she spoke with.
>
> The State called Gene Keller as a rebuttal witness. Keller testified as to defendant's membership in the Vice Lords, and stated defendant had participated in his initiation into the gang and attended numerous gang meetings.

(Resp't Ex. A, Appellate Court of Illinois, First Judicial District, Case No. 92-19459, Order of July 13, 1998 at 1-6.) Furthermore, according to the record before this court, petitioner's mother testified at trial similarly to her testimony at the suppression hearing and was not subjected to cross-examination. (Resp't Ex. B, Appellate Court of Illinois, First Judicial District, Case No. 92-19459, Br. and Argument for Def-Appellant at 20.) Moreover, petitioner testified in his own defense at trial, denying he confessed to detectives and denying that he was a Vice Lords member. (*Id.* at 20-21.)

Petitioner also proffers a new fact that Keller falsified his trial testimony regarding petitioner's gang affiliation with the Vice Lords. As proof, petitioner attaches an affidavit of Keller, who now recants his trial testimony. (Pet. Ex. E, G. Keller Aff.) Keller attests that he falsely testified as to petitioner's gang affiliation in exchange for not being prosecuted for a three-car accident he caused when he was fleeing police, who had a warrant for his arrest. (*Id.*) According to Keller, there was a warrant issued because, although he originally planned to testify in petitioner's defense, he was supposed to testify against Dove and Townsend at their trials and did not want to do so. (*Id.*)

## PROCEDURAL HISTORY

At his first trial, petitioner was tried together with Townsend although Townsend received a bench trial and petitioner received a jury trial. (Resp't Ex. B at 4 n.1.) The judge acquitted Townsend but petitioner's trial ended in a hung jury. (*Id.*) At his second trial, petitioner was tried together with Dove in a double jury trial. (*Id.* at 4, n.2.) Dove's jury acquitted him but on July 13, 1995, petitioner's jury convicted him of one count of first-degree

murder and two counts of aggravated battery with a firearm. (*Id.*) On September 14, 1995, the trial judge imposed a 30-year sentence for murder and 15-year sentences for each count of aggravated battery with a firearm, all sentences to run concurrently. Petitioner was represented on appeal by the Illinois Appellate Defender. On July 13, 1998, the Illinois Appellate Court affirmed. On August 27, 1998, petitioner, through newly obtained counsel, Frederick F. Cohn ("Cohn"), filed a petition for rehearing, which was denied on September 10, 1998. Petitioner's petition for leave to appeal to the Illinois Supreme Court was denied on December 2, 1998.

On December 31, 1998, petitioner by Cohn filed a post-conviction petition under 725 ILCS 5/122-2 *et seq.*, which was summarily denied on January 11, 1999. Petitioner filed a notice of appeal from the denial of his post-conviction petition. On November 8, 2000, the Illinois Appellate Court dismissed petitioner's appeal for want of prosecution, petitioner having failed to file a brief by the April 10, 2000 due date. On December 14, 2000, petitioner, by new counsel Joan A. HillMcClain ("HillMcClain"), filed the pending petition for writ of habeas corpus in this court.

## DISCUSSION

### A. Claim (1): petitioner's involuntary confession

*1. Procedural default*

Respondent asserts that petitioner's involuntary confession claim is procedurally defaulted for either of the following reasons: (a) the state court disposed of this claim on independent and adequate state law grounds; or (b) petitioner failed to fairly present this claim to the state courts. Because petitioner cannot cross the fair presentment threshold, discussion of (a) is omitted.

Before reviewing the state court's decision, the habeas court must determine whether the petitioner fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan*, 526 U.S. at 844-45. "For a constitutional claim to be fairly presented to a state court, both the operative facts and

7

'controlling legal principles' must be submitted." *Rodriguez* v. *Scillia*, 193 F.3d 913, 916 (7th Cir. 1998), quoting *Picard* v. *Connor*, 404 U.S. 270, 278 (1971). In *Verdin* v. *O'Leary*, the Seventh Circuit stated that:

> . . . the Supreme Court made clear in *Castille* v. *Peoples*, 489 U.S. 346, 351 . . . (1989), that submitting a claim to the state's highest court on discretionary review does not constitute fair presentment. And, as this court stated in *Cruz* v. *Warden of Dwight Correctional Center*, 907 F.2d 665, 669 (7th Cir. 1990), presentation of a claim for the first time to a state appellate court in a petition for rehearing is similarly insufficient.

972 F.2d 1467, 1479 n.13 (7th Cir. 1992); *see also Everette* v. *Roth*, 37 F.3d 257, 261 (7th Cir. 1994). Because petitioner clearly raised his involuntary confession claim for the first time in the petition for rehearing, he is procedurally defaulted on this claim unless he can overcome this default.

Petitioner, in his reply brief, argues that he overcomes procedural default because he was denied effective assistance of appellate counsel. Moreover, petitioner argues that he is actually innocent, invoking the fundamental miscarriage of justice exception. *Accord, Edwards* v. *Carpenter*, 529 U.S. 446, 451 (2000) (an exception to the requirement that the petitioner show cause for and prejudice from procedural default "is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice.").

a.  *Ineffective assistance of appellate counsel*

The guarantees of effective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668 (1984), apply to a first appeal. *See Evitts* v. *Lucey*, 469 U.S. 387, 396-97 (1985). "A default resulting from counsel's failure to appeal a claim can be excused if the failure amounts to ineffective assistance of appellate counsel." *McMillen* v. *Briley*, No. 01 C 7119, 2002 WL 69488, at *7 (N.D. Ill. Jan. 18, 2002), citing *Murray* v. *Carrier*, 477 U.S. 478, 496 (1986); *People* v. *Mack*, 167 Ill. 2d 525, 531-32, 658 N.E.2d 437, 440-41 (1995) (post-conviction review not barred where failure to raise issues on direct appeal stems from incompetency of appellate counsel); *see also Lemons* v. *O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) ("Ineffective

8

assistance of counsel may be considered as cause for procedural default."). But first petitioner must show that he fairly presented the ineffective assistance claim to the state courts. *McMillen*, 2002 WL 69488, at *7, citing *Edwards*, 529 U.S. at 453. Post-conviction review is a proper forum for addressing claims of ineffective assistance of appellate counsel. *Hodges v. Haws*, 955 F. Supp. 958, 961 (N.D. Ill. 1997), citing *Lemons*, 54 F.3d at 360 n.2.

Petitioner presented the ineffective assistance of appellate counsel claim to the state court in his post-conviction petition. After relief was denied, petitioner appealed, but on November 8, 2000, the Illinois Appellate Court dismissed petitioner's appeal for want of prosecution because petitioner had not filed his brief, which was due on April 10, 2000. (Resp't Ex. I, Appellate Court of Illinois, First Judicial District, Case No. 1-00-0504, Order entered Nov. 8, 2000.) Failure to appeal from an order denying a post-conviction relief petition is a procedural default barring further review. *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

Petitioner *pro se* concedes that he failed to perfect his appeal because his counsel, Cohn, failed to file an appellate brief. (Sec. Am. Pet. attached to Pet. Reply Br. at 3.) Petitioner, however, alleges that Cohn stated that he was "simply too busy" to file the brief; thereby, he argues denial of effective assistance of counsel on post-conviction review. (*Id.*) Unfortunately, because there is no constitutional right to post-conviction counsel, *see Coleman*, 501 U.S. at 752-53, Cohn's failure to file a brief is attributed to petitioner. Petitioner, therefore, has not overcome the default and this court must conclude that his claim for ineffective assistance of appellate counsel was not fairly presented to the state courts.

b.  *The fundamental miscarriage of justice exception*

Petitioner next attempts to overcome procedural default by arguing that he is actually innocent, invoking the doctrine that a petitioner can overcome procedural default through showing that his conviction was the result of a "fundamental miscarriage of justice." *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (noting the miscarriage of justice exception "is concerned with actual as compared to legal innocence"). In *Bell v. Pierson*, the Seventh Circuit stated:

> Under *Schlup* [v. *Delo*, 513 U.S. 298, 315 (1995)], in order for a case to fall under the "narrow class of cases" which implicates a fundamental miscarriage of justice, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 315 . . . . This means the petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Id.* at 327. . . . Only then can the petitioner's constitutional claims be considered.
>
> * * *
>
> The determination of whether a petitioner established a probability that no reasonable juror would have convicted him in light of new evidence is a mixed question of law and fact. . . . Unlike the legal question of whether no reasonable juror could have convicted the defendant, . . . *Schlup* requires an analysis of whether no reasonable juror *would* have convicted, and *Schlup* requires the district court to consider the credibility of the petitioner's new evidence. . . . Accordingly, a district court applying *Schlup* must make factual findings.

267 F.3d 544, 551-52 (7th Cir. 2001) (some internal citations and quotations omitted) (emphasis in original).

The new evidence petitioner proffers is the affidavit of Keller, who would testify that petitioner was not a Vice Lords member. This would have been contrary to rather than consistent with the police officer's testimony that petitioner admitted to the detectives during his interrogation that he was a Vice Lords member. (Resp't Ex. A at 1, 2; Resp't Ex. B at 19, stating Detective Wilkins and ASA Jefferson testified that "defendant told them he was a member of the Vice Lords street gang.") Because it is within the jury's province to weigh conflicting testimony, however, one cannot conclude that no reasonable juror would have voted to convict petitioner based on Keller's testimony. Nor can this court conclude that the new testimony, even if believed, points to actual innocence where other evidence of petitioner's participation in the crime exists, *e.g.*, that defendant was at the scene and that he deposited his weapon at the home of a gang member.

Nevertheless, the court recognizes there may be exceptional cases that meet the fundamental miscarriage of justice exception where a petitioner does not provide new evidence but does provide "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless

constitutional error." *Schlup*, 513 U.S. at 316. Petitioner, however, does not do so here. Petitioner professes his innocence by focusing on the credibility of the State's witnesses who testified at his suppression hearing and at trial. At the suppression hearing, petitioner denied that he was a Vice Lords member and testified that he was coerced into a confession. At his trial, petitioner again denied that he was a Vice Lords member and denied that he had confessed. At both the suppression hearing and the trial, petitioner's mother testified that how she was prevented from being present at her son's interrogation. The State's witnesses, however, testified that petitioner admitted he was a Vice Lords member, that petitioner's mother had access to her son at all times but left the room at certain times, that petitioner and his mother got into an argument when petitioner indicated that he wanted to tell the police the truth (which resulted in petitioner's mother leaving the room and the police summoning a youth officer), and that petitioner made the oral confession. (Resp't Ex. A at 3-4.) Each of the witnesses was subject to cross-examination. Resolving the credibility issues in favor of the State, the trial court denied petitioner's motion to suppress and, based on the evidence, the jury convicted petitioner. Petitioner cannot now demonstrate his innocence by re-attacking the credibility of the State's witnesses. *See Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993) ("Federal courts are in no position to redetermine the credibility of witnesses observed by state trial courts."). As such, petitioner does not meet the fundamental miscarriage of justice exception. The involuntary confession claim will be denied because it is procedurally defaulted.

**B.     Claim (2): trial counsel was ineffective for failing to object to the improper jury instruction**

During petitioner's trial, the State submitted Illinois Pattern Instruction ("IPI") 3.06 instead of IPI 3.07 and petitioner's counsel failed to object to IPI 3.06. According to petitioner, IPI 3.06 assumes that petitioner made the oral confession because it omits the bracketed information set out below:

11

> 3.06-3.07 Statements by Defendant
>
> You have before you evidence that the defendant made a statement relating to the offenses charged in the indictment. It is for you to determine [*whether the defendant made the statements and if so,*] what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made.

(1992) (emphasis added.) The Committee Note to IPI 3.06-3.07 (1992) provides that "the bracketed phrase in the second sentence should be deleted only when the defendant admits making all the material statements attributed to him."

### 1. *Procedural default*

Respondent argues that petitioner procedurally defaulted on claim (2) because he failed to fairly present his claim to the Illinois Appellate Court on direct appeal. The court, however, finds that petitioner fairly presented claim (2) in the state courts' proceedings. On direct appeal, petitioner argued that his trial counsel was ineffective for failing to object to the improper jury instruction although the Illinois Appellate Court did not address this claim. (Resp't Ex. A; Resp't Ex. B at 39-40).[4] *See Wallace v. Duckworth*, 778 F.2d 1215, 1223 (7th Cir. 1985) ("if the substance of the petitioner's constitutional claims are raised in his state court brief, the fact that the state court does not explicitly pass on the claims does not preclude exhaustion, because the state court had the opportunity to consider the issues[,]" citing *Smith v. Digman*, 434 U.S. 332, 333-34 (1978)). Moreover, petitioner argued this claim in his petition for leave to appeal to the Illinois Supreme Court. (Resp't Ex. E, Supreme Court of Illinois, Case No. 86385, Pet. for Leave to Appeal at 14.) Because petitioner raised this claim on direct appeal, the court finds that

---

[4]In the petition for rehearing, Cohn wrote that petitioner did not raise the claim for ineffective assistance of trial counsel based on failure to object to the improper jury instruction in his original brief to the Illinois Appellate Court. (Resp't Ex. C, Appellate Court of Illinois, First Judicial District, Case No. 1-95-3766, Appellant's Pet. for Rehearing at 10.) Relying on Cohn's statement in the petition for rehearing, respondent argues that petitioner did not fairly present this claim and petitioner concedes this in his reply brief. But, in petitioner's brief for leave to appeal to the Illinois Supreme Court, Cohn wrote that petitioner did raise this claim in his original brief to the Illinois Appellate Court but that the appellate court did not include this claim in its analysis in determining whether other actions by trial counsel amounted to ineffective assistance of counsel. (Resp't Ex. E, Supreme Court of Illinois, Case No. 86385, Pet. for Leave to Appeal at 14.) Although Cohn's actions are confusing, the court finds that petitioner fairly presented this claim.

petitioner did not procedurally default on claim (2). The court now addresses the merits of the claim.

2. *Merits*

To prevail on a claim for ineffective assistance of (trial) counsel, petitioner must meet the stringent two-pronged test enunciated by the Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668 (1984). *See Bell* v. *Cone*, 535 U.S. 685, ___, 122 S. Ct. 1843, 1852 (2002) (determining that counsel's performance met the *Strickland* standard). Under the *Strickland* standard, petitioner must show: "(1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense." *Kubat* v. *Thieret*, 867 F.2d 351, 359 (7th Cir. 1989); *see also Williams*, 529 U.S. at 390-91; *Porter* v. *Gramley*, 112 F.3d 1308, 1312 (7th Cir. 1997); *Kavanagh* v. *Berge*, 73 F.3d 733, 735 (7th Cir. 1996). With regard to the first prong, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. As for the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the court finds that the petitioner fails to meet one prong, it need not consider the other. *See Brumley* v. *DeTella*, 83 F.3d 856, 861 (7th Cir. 1996) ("a habeas court may focus on either prong of this test, as the efficient dispatch of judicial business dictates").

Although the Illinois Appellate Court did not address petitioner's ineffective assistance of counsel claim, it did address petitioner's claim regarding whether the trial court erred by giving IPI 3.06 without the bracketed information, which is petitioner's claim (4) on habeas review. The appellate court determined that petitioner waived this claim because of trial counsel's failure to object. In holding the claim waived, the appellate court more or less acknowledged deficient performance -- the attorney should have objected to the instruction and raised it in a motion for a new trial. Nevertheless, the court determined that even if the claim was not waived, the error

13

was harmless because the jury also received another jury instruction, IPI 1.02, which provides that the jury may reject the testimony of any witness, including those who testified that petitioner made certain incriminating statements. The court concluded that the jury received sufficient instruction regarding the consideration of petitioner's statement through IPI 1.02. (Resp't Ex. A at 11.)

The Illinois Appellate Court's reasoning that the trial court did not err in giving IPI 3.07 to the jury demonstrates that it would not have granted an ineffective assistance of counsel claim on this basis. Given the Illinois Appellate Court's acknowledgment that IPI 1.02 was before the jury, this court agrees with the appellate court that counsel's failure to object would have not resulted in a different outcome. *Accord, Estelle* v. *McGuire*, 502 U.S. 62, 71-72 (1991) (although the case involved a due process and not Sixth Amendment inquiry, the Court determined that for an improper jury instruction claim, the court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. . . . It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.") (internal citations and quotations omitted). As such, the court will deny claim (2) on the merits. For this same reason, the court will deny on the merits petitioner's claim (4) that the trial court erred by giving the improper jury instruction.

### C. Claim (3): trial counsel was ineffective at the suppression hearing

Petitioner asserts in claim (3) that he was denied effective assistance of counsel at his suppression hearing because (a) trial counsel failed to call Attorney Lyle as a witness where her testimony would have shown that the police failed to honor petitioner's right to remain silent and to have an attorney present during his interrogation; (b) trial counsel failed to investigate and discover the name of the police officer whom Lyle instructed over the phone that petitioner should not be interrogated without her presence; (c) trial counsel failed to investigate police reports which contained evidence of the involuntariness of his confession such as that Detective

14

McDermott falsely testified that petitioner confessed and ASA Jefferson and the youth officer prepared a written statement of that confession; (d) trial counsel failed to read the police reports prior to the hearing and that these reports showed that a witness, Joseph Tribett, could have been called to verify that petitioner was not involved in the crime; (e) trial counsel failed to read the police reports from which he would have learned that a Fourth Amendment violation occurred because the police went to petitioner's home when investigating the crime and confiscated photographs of petitioner to show numerous witnesses; and (f) trial counsel failed to read the police reports from which he would have learned that another witness, Jermaine Bates ("Bates"), who was directly involved in the murder, had a motive to harm the victim because the victim assaulted and robbed Bates' mother the day before the murder. (Sec. Am. Pet. at 7-8.)

1. *Procedural default*

Petitioner fairly presented claim 3(a) but not claims 3(b) through (f) in the state courts' proceedings. On direct appeal, petitioner argued that his trial counsel was ineffective because he failed to call Lyle at his suppression hearing. (Resp't Ex. B at 25-35; Resp't E at 14.) Petitioner, however, did not argue in the state court proceedings that his trial counsel was ineffective for failing to identify the detective who spoke to Lyle. Further, petitioner did not argue in the state court proceedings that his trial counsel was ineffective for failing to read or investigate the police reports before the suppression hearing.[5] As such, the court will deny claims 3(b) through (f) as procedurally defaulted. The court next addresses the merits of claim 3(a).

2. *Merits: claim 3(a): trial counsel was ineffective for failing to call Lyle at the suppression hearing*

On direct appeal, the Illinois Appellate Court applied the *Strickland* standard and ruled that trial counsel was not ineffective for failing to call Lyle as a witness at the suppression hearing. Regarding the "deficient" prong, the appellate court determined that there was no

---

[5]On appeal, petitioner pointed out inconsistencies in the testimony of the State's witnesses. (Resp't Ex. B at 33-35.) This was done in support of the argument that counsel's failure to call Lyle would have further demonstrated that the confession should have been suppressed rather than independent assignments of error. (*See id.*)

evidence that the decision not to call Ms. Lyle was "a deficiency in the defense[.]" (Resp't Ex. A at 7.) Regarding the "prejudice" prong, the appellate court found that the outcome would not have been different because petitioner presented his theory of defense at the hearing without Lyle's testimony. Further, the appellate court pointed out that trial counsel did call Lyle at trial but her testimony "did not contain corroboration of defendant's allegations that his confession was illegally obtained and should be suppressed" because she could not corroborate petitioner's mother's testimony about her efforts to protect her son. (Resp't Ex. A at 8.) Moreover, the appellate court determined that Lyle's testimony was impeached at trial and, therefore, her testimony would have been impeached at the suppression hearing.

Besides citing *Strickland*, petitioner makes no showing how counsel's performance prejudiced him to such an extent that the outcome would have been different. Further, petitioner offers no affidavit of what Lyle would have testified at the suppression hearing. *See Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997) ("In the case of an uncalled witness, we have held that at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial[,]" citing *United States v. Kamel*, 965 F.2d 484, 491 (7th Cir. 1992)). Because petitioner makes no showing that the appellate court's decision was contrary to or involved an unreasonable application of *Strickland*, the court must deny claim 3(a).

## ORDER

For the reasons stated above, the court concludes that petitioner is not entitled to relief. Petitioner's claim that his confession was involuntary is denied because it is procedurally defaulted. Petitioner's claim that he was denied effective assistance of trial counsel for failure to object to an improper jury instruction is denied on the merits. Petitioner's claim that he was denied effective assistance of counsel at his suppression hearing is denied in part as procedurally defaulted and is denied in part on the merits. Petitioner's claim that the trial court erred by giving the improper jury instruction is denied on the merits. This case is terminated.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: March 10, 2003